1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BOARD OF TRUSTEES ON BEHALF              No. 2:14-cv-2740-MCE-KJN
      OF THE TILE SETTERS AND
12    FINISHERS OF NORTHERN
      CALIFORNIA DEFINED BENEFIT
13    PENSION TRUST AND THE TILE               ORDER AND
      SETTERS AND FINISHERS OF
14    NORTHERN CALIFORNIA HEALTH               FINDINGS AND RECOMMENDATIONS
      AND WELFARE TRUST
15

16                Plaintiff,

17         v.

18    SHANE ALEXANDER CUSTOM TILE
      AND STONE, INC.
19

20                Defendant.

21

22    INTRODUCTION

23         Presently pending before the court is a motion for default judgment filed against defendant

24    Shane Alexander Custom Tile and Stone, Inc. ("defendant") by plaintiff Board of Trustees on

25    behalf of the Tile Setters and Finishers of Northern California Defined Benefit Pension Trust

26    ("Pension Trust") and the Tile Setters and Finishers of Northern California Health and Welfare

27    Trust ("Health and Welfare Trust") (collectively, "plaintiff").  (ECF No. 7.)  Defendant failed to

28    file an opposition to the motion in accordance with Local Rule 230(c).  At the April 30, 2015

                                                 1

1    hearing on the motion, attorney Teague Paterson appeared telephonically on behalf of plaintiff,

2    and no appearance was made on behalf of defendant.

3         After carefully considering the briefing and other documentation in support of the motion,

4    the oral argument at the hearing, the court's record, and the applicable law, the court recommends

5    that the motion be GRANTED IN PART on the terms outlined below.

6    BACKGROUND

7         The background facts are taken from the operative original complaint, unless otherwise

8    noted.  (See Complaint, ECF No. 1 ["Compl."].)

9         Plaintiff is the plan sponsor and administrator of two ERISA[1]-regulated multiemployer

10   benefit plans, the Pension Trust and the Health and Welfare Trust.  (Compl. ¶ 4.)  The Pension

11   Trust was created and maintained for the purpose of collecting and receiving contributions and

12   providing pension benefits to eligible participants in accordance with an Agreement and

13   Declaration of Trust ("Pension Trust Agreement") and collective bargaining agreements between

14   the Tile Setters and Finishers Union of Northern California ("Union") and employers engaged in

15   activities affecting commerce and their trade association, The Associated Tile Contractors of

16   Northern California ("Association").  (Compl. ¶¶ 5, 8, Ex. A; Declaration of Teague P. Paterson,

17   ECF No. 9 ["Paterson Decl."] ¶ 35, Ex. 8.)  Similarly, the Health and Welfare Trust was created

18   and maintained for the purpose of collecting and receiving contributions and providing health and

19   welfare benefits to eligible participants in accordance with an Agreement and Declaration of

20   Trust ("Health and Welfare Trust Agreement") and the collective bargaining agreements between

21   the Union and the Association.  (Compl. ¶¶ 6, 23, Ex. G; Paterson Decl. ¶ 35, Ex. 8.)  Defendant

22   is an employer located in Rocklin, California, that previously participated in the Pension Trust

23   and Health and Welfare Trust on behalf of its employees. (Compl. ¶ 7.)  Defendant also joined the

24   Association around August of 2009.  (Compl. ¶¶ 5, 10, Ex. B.)

25        Defendant participated in the Pension Trust since at least January of 2004, submitting

26   monthly contributions on behalf of covered employees, with such employees accruing benefits

27

28   [1] The acronym "ERISA" stands for the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.

2

under the Pension Trust's pension plan.  (Compl. ¶¶ 9, 11.)  On April 29, 2008, in accordance
with ERISA, plaintiff adopted a Withdrawal Liability Policy, which provides for the assessment
of employer withdrawal liability on contributing employers that withdraw from the Pension Trust.
(Compl. ¶ 12, Ex. C.)  Thereafter, around July 1, 2013, defendant ceased making contributions to
the Pension Trust on behalf of its covered employees, which constituted a withdrawal from the
Pension Trust for purposes of ERISA and the Withdrawal Liability Policy.  (Compl. ¶¶ 13-14.)
Plaintiff then commissioned from the plan's actuary an assessment of defendant's withdrawal
liability, which amounted to $128,465.00 in principal.  (Compl. ¶¶ 15, 41, Ex. D.)  That
assessment and a demand for payment of such employer withdrawal liability were served on
defendant no later than December 17, 2013.  (Compl. ¶¶ 16-18.)  Along with the demand for
payment, and in accordance with the Withdrawal Liability Policy and ERISA, plaintiff offered a
payment schedule, with the first installment due within 60 days.  (Compl. ¶ 18, Ex. E, see also
Ex. C at Section V.)  However, defendant subsequently failed to make any installment payment;
nor did defendant respond to, or request review of, that assessment.  (Compl. ¶ 19.)  Only on
April 15, 2014, after plaintiff had sent another payment demand on April 2, 2014, defendant
indicated that it did not consider itself bound by the Pension Trust's withdrawal liability
provisions.  (Compl. ¶¶ 20-21, Ex. F.)

        Defendant also participated in the Health and Welfare Trust since at least 2004,
submitting monthly contributions on behalf of covered employees, with such employees receiving
health benefits pursuant to the Health and Welfare Trust.  (Compl. ¶¶ 24, 26.)  The Health and
Welfare Trust Agreement and the applicable collective bargaining agreement required prompt
payment of monthly contributions on or before the 10th day of the month following the month in
which the employee's work was performed, and specified that liquidated damages would be
assessed for failure to timely pay the required contributions.  (Compl. ¶¶ 25, 28, Ex. G at §§ 7.01,
7.07; Paterson Decl. Ex. 8 at Article XII.)  Between May 2010 and April 2013, defendant
untimely remitted contributions to the Health and Welfare Trust, and plaintiff consequently
assessed liquidated damages for such untimely contributions in accordance with the Health and
Welfare Trust Agreement.  (Compl. ¶¶ 27-28, Exs. H, I.)  According to plaintiff, defendant paid a

portion, but not all, of the liquidated damages owed, and defendant ceased participating in the Health and Welfare Trust around June 30, 2013.  (Compl. ¶¶ 7, 29.)  On March 17, 2014, plaintiff sent a demand for payment, which indicated that defendant still owed a principal amount of $14,174.37 in liquidated damages, but defendant did not respond to that demand.  (Compl. ¶¶ 29-34, Exs. H, I.)

Plaintiff commenced this action on November 21, 2014.  In its complaint, plaintiff asserts causes of action under ERISA and the trust documents for:  (1) collection of employer withdrawal liability related to the Pension Trust, as well as associated interest and liquidated damages; and (2) collection of liquidated damages for late contributions to the Health and Welfare Trust, as well as interest.  (Compl. ¶¶ 35-51 & Prayer.)  The complaint also seeks attorneys' fees and costs incurred in attempting to recover the above-mentioned relief.  (Id.)

After plaintiff effectuated service of process on defendant on December 4, 2014 (ECF No. 4), defendant failed to respond to the complaint.  As such, upon plaintiff's request, the Clerk of Court entered defendant's default on January 21, 2015.  (ECF Nos. 5-6.)  The instant motion for default judgment followed.  (ECF No. 7.)  The motion was served on defendant by mail.  (Id.)

LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

1   Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

2          As a general rule, once default is entered, well-pleaded factual allegations in the operative

3   complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc.

4   v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin.

5   Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs,

6   285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pled allegations in the complaint

7   are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings,

8   and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co.

9   of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388

10  (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating

11  that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v.

12  Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be

13  entered on a legally insufficient claim").  A party's default does not establish the amount of

14  damages.  Geddes, 559 F.2d at 560.

15  DISCUSSION

16          Appropriateness of the Entry of Default Judgment Under the Eitel Factors

17                  1.      *Factor One: Possibility of Prejudice to Plaintiff*

18          The first Eitel factor considers whether the plaintiff would suffer prejudice if default

19  judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting

20  a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would face

21  prejudice if the court did not enter a default judgment, because plaintiff would be without another

22  recourse against defendant.  Accordingly, the first Eitel factor favors the entry of a default

23  judgment.

24                  2.      *Factors Two and Three: The Merits of Plaintiff's Substantive Claims and*

25  *the Sufficiency of the Complaint*

26          The court considers the merits of plaintiff's substantive claims and the sufficiency of the

27  complaint together below because of the relatedness of the two inquiries.  The court must

28  consider whether the allegations in the complaint are sufficient to state a claim that supports the

1    relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

2        Under ERISA, "[a] plan fiduciary…who is adversely affected by the act or omission of

3    any party under this subtitle with respect to a multiemployer plan…may bring an action for

4    appropriate legal or equitable relief, or both." 29 U.S.C. § 1451(a)(1).  "In any action under

5    [section 1451] to compel an employer to pay withdrawal liability, any failure of the employer to

6    make any withdrawal liability payment within the time prescribed shall be treated in the same

7    manner as a delinquent contribution (within the meaning of section 1145 of this title)."  Id. §

8    1451(b).  In turn, section 1145 provides that "[e]very employer who is obligated to make

9    contributions to a multiemployer plan under the terms of the plan or under the terms of a

10    collectively bargained agreement shall, to the extent not inconsistent with law, make such

11    contributions in accordance with the terms and conditions of such plan or such agreement."  Id. §

12    1145.  Furthermore, "[i]n any action under this subchapter by a fiduciary for or on behalf of a

13    plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the

14    court shall award the plan—(A) the unpaid contributions, (B) interest on the unpaid contributions,

15    (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated

16    damages provided for under the plan in an amount not in excess of 20 percent (or such higher

17    percentage as may be permitted under Federal or State law) of the amount determined by the

18    court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by

19    the defendant, and (E) such other legal or equitable relief as the court deems appropriate."  Id. §

20    1132(g)(2).

21        Here, the well-pled allegations of the complaint, the exhibits attached to the complaint,

22    and the documentary evidence submitted along with plaintiff's motion, as outlined above,

23    adequately demonstrate that defendant failed to pay assessed employer withdrawal liability

24    related to the Pension Trust, and failed to pay in full liquidated damages for defendant's late

25    contributions to the Health and Welfare Trust, in violation of ERISA and the applicable trust

26    documents.  Consequently, plaintiff, as a fiduciary of the Pension Trust and Health and Welfare

27    Trust, may seek recovery of such payments on behalf of the trusts.  Therefore, plaintiff's claims

28    have merit.  The exact relief to which plaintiff is entitled is discussed in greater detail below.

1    In light of the court's conclusion that plaintiff's claims have merit and are sufficiently

2    pled, the second and third Eitel factors favor the entry of a default judgment.

3        3.    *Factor Four: The Sum of Money at Stake in the Action*

4    Under the fourth factor cited in Eitel, "the court must consider the amount of money at

5    stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at

6    1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D.

7    Cal. 2003).  Although the sum of money sought in this case is not insignificant, it bears a

8    relationship to the seriousness of defendant's conduct, given that defendant failed to make the

9    payments required by the trust documents and ERISA.  As plaintiff points out, for benefit plans

10   such as the Pension Trust and Health and Welfare Trust to remain sustainable, it is vital that

11   employers timely pay contributions and other liabilities to the trusts.  Moreover, as discussed

12   below, the requested relief is specifically authorized and contemplated by the trust documents and

13   ERISA.  Under these circumstances, the court concludes that this factor does not militate against

14   the entry of a default judgment.

15       4.    *Factor Five: The Possibility of a Dispute Concerning Material Facts*

16   Because the court may assume the truth of well-pled facts in the complaint (except as to

17   damages) following the clerk's entry of default, there is no likelihood that any genuine issue of

18   material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D.

19   Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court

20   clerk enters default judgment, there is no likelihood that any genuine issue of material fact

21   exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at

22   1177.  As such, the court concludes that the fifth Eitel factor favors a default judgment.

23       5.    *Factor Six: Whether the Default Was Due to Excusable Neglect*

24   In this case, there is simply no indication in the record that defendant's default was due to

25   excusable neglect.  Accordingly, this Eitel factor favors the entry of a default judgment.

26   ////

27   ////

28   ////

1  6. *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil*

2  *Procedure Favoring Decisions on the Merits*

3  "Cases should be decided upon their merits whenever reasonably possible." Eitel, 782

4  F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing

5  alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.

6  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.

7  Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Accordingly, although the court is cognizant of the policy

8  in favor of decisions on the merits—and consistent with existing policy would prefer that this

9  case be resolved on the merits—that policy does not, by itself, preclude the entry of default

10  judgment.

11  In sum, after weighing all the Eitel factors, the court concludes that plaintiff is entitled to a

12  default judgment against defendant, and recommends that such a default judgment be entered.

13  All that remains is a determination of the specific relief to which plaintiff is entitled.

14  Relief To Be Awarded

15  The court addresses the relief to be awarded pursuant to each cause of action separately

16  below.

17  *First Cause of Action – Employer Withdrawal Liability Related to Pension Trust*

18  Defendant was assessed as owing $128,465.00 in principal withdrawal liability.  (Compl.

19  ¶¶ 15, 41, Ex. D; Paterson Decl. ¶ 36.)  Because defendant failed to seek review of that

20  assessment in accordance with the Withdrawal Liability Policy and ERISA, defendant is deemed

21  to have waived any right to contest that assessment.  (See Compl. Ex. C at Section VIII, "Appeals

22  and Arbitration"); see also 29 U.S.C. §§ 1399(b)(2), 1401(a)-(b).  As such, $128,465.00 in

23  principal withdrawal liability should be awarded.

24  Pursuant to the Withdrawal Liability Policy and ERISA, defendant also owes interest on

25  the principal withdrawal liability, which accrues at the rate of 7.25% per annum, and amounts to

26  $24,782.50 through March 2015.  (Complaint ¶¶ 42-43, Ex. C at Section IX; Paterson Decl. ¶ 37);

27  see also 29 U.S.C. § 1132(g)(2)(B).

28  ////

8

Furthermore, pursuant to the Withdrawal Liability Policy and ERISA, defendant is liable for payment of liquidated damages equal to 20% of the principal withdrawal liability amount ($128,465.00), which is $25,693.00.  (Compl. ¶¶ 44-45, Ex. C at Section IX; Paterson Decl. ¶ 38); see also 29 U.S.C. § 1132(g)(2)(C).

### Second Cause of Action – Liquidated Damages for Late Contributions to Health and Welfare Trust

Consistent with ERISA, the Health and Welfare Trust Agreement provides that "the amount of damages for failure to pay in full within the time limits specified herein shall be, by way of liquidated damages and not assessment of penalty, the sum of ten percent (10%) of the amount due or the sum of fifty dollars ($50.00), whichever is greater."  (Compl. Ex. G at Section 7.07); see also 29 U.S.C. § 1132(g)(2)(C).  Pursuant to that provision of the Health and Welfare Trust Agreement, defendant still owes a principal amount of $14,174.37 in liquidated damages, which should be awarded.  (Compl. ¶¶ 27-30, 32-34, Exs. H, I; Paterson Decl. ¶ 40.)

Plaintiff also sought $2,709.63 in interest on such liquidated damages.  (Paterson Decl. ¶ 41.)  However, plaintiff failed to point to any specific provision of the Health and Welfare Trust Agreement or ERISA allowing for interest on liquidated damages.  Moreover, at the hearing, plaintiff withdrew the request for interest on liquidated damages, thereby obviating the need for resolution of that issue.

### Costs and Attorneys' Fees

As noted above, ERISA and the trust documents specifically authorize an award of reasonable attorneys' fees and costs incurred in bringing the action.  (Compl. Ex. C at Section IX, Ex. G at Section 7.07); see also 29 U.S.C. § 1132(g)(2)(D).

Here, plaintiff requests a total amount of $477.28 in costs related to filing fees, service of process, and postage, which is reasonable and should be awarded.  (Paterson Decl. ¶ 20.)

Plaintiff also seeks attorneys' fees already incurred in the amount of $11,425.00 (based on 47.5 hours of work at an hourly rate of $250.00).[2]  (Paterson Decl. ¶¶ 7, 17-19, Ex. 5.)  The court

---

[2] 47.5 hours multiplied by $250 actually equals $11,875, but it appears from the billing records that plaintiff's counsel declined to charge plaintiff for all of the hours worked, resulting in a

1  finds plaintiff's counsel's hourly rate to be reasonable based on rates customarily charged for

2  similar work by attorneys in the Eastern District of California.  The court has also carefully

3  reviewed plaintiff's counsel's billing entries, and finds that the billed hours were reasonably

4  spent.  The court notes that plaintiff's counsel in his briefing further requested an additional

5  $1,500.00 to prepare for, travel to and from, and attend the hearing on the motion.  (Paterson

6  Decl. ¶ 19.)  However, given that defendant did not oppose the motion, and in light of the fact

7  that the court permitted plaintiff's counsel to appear telephonically at the relatively brief hearing,

8  at most one (1) additional hour of time at the hourly rate of $250 is warranted for preparation and

9  appearance at the hearing.  Indeed, at the hearing, plaintiff's counsel himself candidly conceded

10  that the additional fee request related to the hearing should be reduced.  Thus, the court finds that

11  plaintiff should be awarded a total of $11,675.00 in attorneys' fees.

12  CONCLUSION

13        For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

14        1.      Plaintiff's motion for default judgment (ECF No. 7) be GRANTED IN PART on

15  the terms outlined below.

16        2.      Judgment be entered in plaintiff's favor and against defendant.

17        3.      With respect to the Pension Trust, plaintiff be awarded $128,465.00 in principal

18  withdrawal liability, plus interest thereon in the amount of $24,782.50, as well as liquidated

19  damages in the amount of $25,693.00.

20        4.      With respect to the Health and Welfare Trust, plaintiff be awarded liquidated

21  damages in the amount of $14,174.37.

22        5.      Plaintiff be awarded costs in the amount of $477.28.

23        6.      Plaintiff be awarded attorneys' fees in the amount of $11,675.00.

24        7.      The Clerk of Court be directed to close this case.

25        IT IS ALSO HEREBY ORDERED that plaintiff shall forthwith serve a copy of this order

26  and findings and recommendations on defendant by U.S. mail at its last-known address, and file a

27

28  reduced amount of $11,425.00.

10

1    proof of service to that effect.

2            These findings and recommendations are submitted to the United States District Judge

3    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

4    days after being served with these findings and recommendations, any party may file written

5    objections with the court and serve a copy on all parties.  Such a document should be captioned

6    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

7    shall be served on all parties and filed with the court within fourteen (14) days after service of the

8    objections.  The parties are advised that failure to file objections within the specified time may

9    waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th

10   Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

11           IT IS SO ORDERED AND RECOMMENDED.

12   Dated:  May 1, 2015

13

14                                                    KENDALL J. NEWMAN
                                                      UNITED STATES MAGISTRATE JUDGE
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                11